IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUANITA TERESA CONNORS | : CIVIL ACTION |
| | : |
| v. | : |
| | : NO. 17-1084 |
| NANCY A. BERRYHILL | : |

MEMORANDUM

**KEARNEY, J.** September 29, 2017

Juanita Teresa Connors petitions for our review of the Social Security Administration's denial of disability benefits. After extensive review of the underlying record and the arguments presented by Ms. Connors and the Commissioner, we dismiss Ms. Connors's Petition for review in the accompanying Order as we find the Administrative Law Judge's decision is based upon substantial evidence.

I. **Background**

Fifty year-old Juanita Teresa Connors earned a high school education.[1] Ms. Connors's medical history includes alleged low back pain, pain in both hips, and pain while walking.[2] Ms. Connors began treating with Dr. Theophila C. Semanoff for trouble sleeping and for swelling and pain in her right hip in 2012.[3] Ms. Connors suffers from degenerative disc and joint disease.[4]

Before October 23, 2013, she worked as an administrative assistant and worked in food service waiting tables.[5] She has not worked since because her pain causes her too much difficulty getting to work, sitting, and typing.[6]

Ms. Connors filed for disability benefits alleging disability as of October 23, 2013.[7] The Social Security Administration denied her application.[8] Following a hearing, Administrative Law Judge ("ALJ") Paula Garrety denied Ms. Connors's claim in a October 23, 2015 decision.[9] ALJ Garrety applied the required five-step analysis to find Ms. Connors "has not been under a disability within the meaning of the Social Secuirty Act from October 23, 2013 through the date of this decision." ALJ Garrety found Ms. Connors restricted to only sedentary work, which is consistent with the level of work of an administrative assistant based upon Ms. Connors's severe physical impairments under 20 CFR 404.1529, SSRs 96-4p, and 96-7p.[10] ALJ Garrety determined the sedentary work must be limited to a clean and temperate environment with no exposure to heights, scaffolds, ladders, hazards, or humid conditions.[11] ALJ Garrety found Ms. Connors able to perform her past relevant work, but with limitations.[12]

ALJ Garrety afforded limited weight to the opinions of Ms. Connors's treating doctor Dr. Theophila C. Semanoff, and determined the objective medical evidence did not support Ms. Connors's claims she cannot sit, stand, or walk for more than seven hours in an eight-hour workday. The ALJ found Ms. Connors's residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), and can perform her past relevant work as an administrative assistant.[13]

**II. Analysis**

Ms. Connors timely filed a petition for review. Ms. Connors argues ALJ Garrety erred in finding: 1) treating Doctor Semanoff's opinion is not entitled to great weight; 2) the opinion of Ms. Connors's consultative physician, Dr. Digamber, as able to perform sedentary work is entitled to great weight but her opinion relating to a seven hour work day limit is entitled to little weight; and 3) Ms. Connors retained the ability to return to her past sedentary work.[14] We

2

overrule Ms. Connors's objections and affirm ALJ Garrety's findings based on substantial evidence.

Judicial review of ALJ Garrety's October 23, 2015 decision is deferential; we are bound by her findings of fact if they are supported by substantial evidence in the record.[15] We review an ALJ's findings of fact "under the deferential 'substantial evidence' standard."[16] "We must affirm the ALJ so long as his conclusions are supported by substantial evidence."[17] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18] Substantial evidence consists of "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."[19] To determine whether substantial evidence supports the factual finding, we review the record as a whole.[20] Even if we would have decided the matter differently, we are bound by the ALJ's factual findings if they are supported by substantial evidence through the appropriate legal standards.[21]

An ALJ must determine whether the claimant is disabled when examining a challenge to the Commissioner's initial decision denying benefits. Under Title II of the Social Security Act ("Act"), a person who has contributed to the program who suffers from a physical or mental disability is afforded insurance benefits.[22] A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[23] A claimant is only disabled if their impairments are severe to the point it makes their previous work impossible to do or precludes any other kind of gainful work available in the national economy.[24]

A Commissioner applies a five-step sequential evaluation process to determine if a claimant has a disability.[25] If the Commissioner finds disability or non-disability at any point

3

during the analysis, the Commissioner will not review the claim further.[26] Under step one, the claimant must prove he or she is not working at a "substantial gainful activity."[27] Under step two, the claimant must prove she has a "severe impairment."[28] Under step three, the Commissioner must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments to preclude gainful employment.[29] If the claimant's impairment matches or equals a listing, he is presumed disabled.[30] If the impairment does not match or equal a listing, then under step four, the claimant must show he does not have the residual functional capacity ("RFC") to perform his previous work.[31] At step five, the Commissioner must address whether "there are other jobs existing in significant numbers in the national economy which claimant can perform, consistent with his medical impairments, age, education, past work experience, and [RFC]."[32]

### A. ALJ Garrety did not erroneously weigh Dr. Semanoff's opinion.

Ms. Connors argues ALJ Garrety erred by not according great weight to treating physician Dr. Semanoff's opinions.[33] Ms. Connors argues Dr. Semanoff's opinions should be given controlling weight and there is no contrary evidence in the record. Ms. Connors argues ALJ Garrety improperly assigned only some weight because Ms. Connors's financial circumstances limited her ability to obtain medical treatment, the ALJ's opinion on the diagnostic imaging is uninformed and contrary to the record, and Ms. Connors's reason for using a cane should not matter because it is still used for her impairment. We disagree.

An ALJ may accord great weight to a treating physician's opinion, "especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."[34] A treating source's opinion is also entitled controlling weight "when supported by medically acceptable clinical and laboratory diagnostic techniques

4

and is consistent with other substantial evidence in the record."[35] In rejecting a treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion."[36] The ALJ must explain on the record his or her reasons for disregarding a treating physician's opinion.[37] It cannot be for "no reason or for the wrong reason."[38]

An ALJ may decide not to credit a treating physician's opinion only upon providing an adequate explanation.[39] Our court of appeals has repeatedly held when a treating physician's notes, analyzed as a whole, contradict the physician's opinion on a claimant's ability to work, an ALJ may properly rely on those notes in determining the opinion is entitled to little or no weight."[40] An ALJ may reject a treating physician's opinion in favor of a non-examining physician if the latter opinion is more consistent with the evidence.[41]

Ultimately, determining a claimant's RFC is the province of the ALJ and not of the treating physician. An ALJ is required to conduct an independent analysis of the relevant evidence and reach her own determination regarding the claimant's RFC.[42] "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence is part of the ALJ's duties."[43]

ALJ Garrety provided legitimate reasons for assigning limited weight to the opinions of Dr. Semanoff. ALJ Garrety notes Ms. Connors's inconsistent visits as a reason for according only some weight to the opinion. Dr. Semanoff only saw Ms. Connors three times in the past five years and has not received any injections, including epidural injections, since January 9, 2012.[44] ALJ Garrety notes Ms. Connors did not see Dr. Semanoff at all between March 2012 and January 2013.[45] Ms. Connors was scheduled to return three months after her January 14,

5

2013 appointment, but did not return until January 20, 2014.[46] Ms. Connors returned for her last visit with Dr. Semanoff on July 1, 2015.[47]

On January 14, 2013, Dr. Semanoff opined Ms. Connors had "only 'fair' muscle strength in the right lower extremity, but her range of motion of the upper and lower extremities was 'functional.'"[48] On January 20, 2014, Dr. Semanoff ordered imaging which caused her to doubt "very much that her problems were arising in her back", and found normal joint alignment, unremarkable regional soft tissues, left hip had only mild osteoarthritis, only a suggestion of impingement, stable grate 1 anterolistesis, and only mild multilevel lumbar discogenic degenerative disease.[49] In her April 29, 2015 Progress Note, Dr. Semanoff detailed the MRI of the lumbosacral spine in 2011 showed no acute abnormalities along with no evidence of herniated discs.[50] The MRI of Ms. Connors's hips showed a labrum tear, X–rays showed a possible impingements on the left hip but no other abnormalities. Dr. Semanoff made no other recommendations.[51]

ALJ Garrety found the diagnostic imaging to have no significant results supporting Ms. Connors's claims she could not sustain sedentary work. Dr. Thomas Vikoren also reviewed October 24, 2012 images showing normal pelvic and right hip AP and internal radiographs, and questioned whether Ms. Connors had a right hip labral tear.[52] On February 22, 2014, a left hip CR showed "mild" osteoarthritis and a lumbosacral CR showed "mild" degenerative disc disease.[53] ALJ Garrety relied upon the conflicting results to determine the diagnostic imaging record presented no significant findings.

ALJ Garrety found Ms. Connors "did not regularly see her primary care physician and attended little chiropractic treatment."[54] Ms. Connors challenges this finding because she does not have enough money to pay for the treatment and visits due to the size of her deductible

6

payment.[55] Dr. Semanoff recommended Ms. Connors be evaluated by orthopedics, but seeing a physician cost her $120 due to her high deductible.[56] ALJ Garrety explains Ms. Connors's testimony of "smoking cigarettes daily" undermines Ms. Connors's and Dr. Semanoff's reason for a lack of continual visits and therapy because she has money to afford cigarettes.[57] While we find this speculation must be disregarded, the fact remains Ms. Connors did not attend her doctor visits. As such, we have no record of ongoing consistent treatment which could possibly demonstrate a disability. Her reasons for not going to the doctor visits do not affect whether she is disabled unless she can show her disability precluded her from visiting the doctor. Lack of funds is not a disability under the Social Security Act.

ALJ Garrety found inconsistences between Dr. Semanoff's notes pertaining to Ms. Connors's cane use and Dr. Charles L. Nelson's contradicted opinion regarding her instability. Dr. Semanoff opined Ms. Connors needed to use a cane, but recommended it to aid in healing her left hip and leg.[58] ALJ Garrety relied upon Dr. Nelson's treatment notes from December 12, 2012 and February 18, 2013 stating Ms. Connors had no instability that required a cane.[59] ALJ Garrety relied on Dr. Nelson's opinion contradicting Dr. Semanoff's notes to determine Dr. Semanoff's opinion is entitled to little or no weight as given permission under our Court of Appeals.

Based on her detailed review of the medical evidence, ALJ Garrety afforded limited weight to Dr. Semanoff's opinions. ALJ Garrety explained her reasons for the limited weight given to Dr. Semanoff's opinion including Ms. Connors's infrequent visits, medical evidence, conflicting notes and contradictory opinions.

**B. ALJ Garrety did not err in giving great weight to the part of Dr. Digamber's opinion finding Ms. Connors could perform sedentary work but limited weight to the opinion of a seven hour work day limit.**

Ms. Connors objects to ALJ Garrety's interpretation of the State agency examination by Dr. Pramod Digamber who found Ms. Connors able to perform sedentary work. Ms. Connors argues ALJ Garrety erroneously interpreted Dr. Digamber's opinion finding Ms. Connors able to perform sedentary work because ALJ Garrety provided no reason as to why she did not accept Dr. Digamber's opinion Ms. Connors being able to work only seven hours a day.

Our court of appeals instructs the ALJ makes the ultimate determination regarding a party's disability and RFC determination, not the treating or examining physicians or State agency consultants.[60] An ALJ "must explain the weight given to physician opinions and the degree to which a claimant's testimony is credited."[61] An ALJ may accept some portions of a medical source's opinion while rejecting other opinions from the same source.[62] An ALJ only needs to "articulate at some minimum level of analysis of a particular line of evidence" and not write an evaluation of every piece of evidence.[63]

"Although treating and examining physicians opinions often deserve more weight than the opinions of doctors who review records…the law is clear…the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."[64] State agency opinions and consultants merit great consideration because they are experts in the Social Security disability programs.[65] State agency medical and psychological consultants, and other program and medical specialists are experts in Social Security disability evaluation.[66]

On January 31, 2014, Dr. Digamber conducted a Social Security physical consultative examination, and reported Ms. Connors had a history of low back pain and pain in both hips.[67]

Dr. Digamber reported Ms. Connors described her back pain as severe and constant, but noted she only rated it a three or four on a scale of 10, and only eight to ten upon exacerbation.[68] Dr. Digamber noted Ms. Connors walked with a slight limp with and without her cane, but the limp was "exaggerated."[69] Ms. Connors did not need help changing for the exam or getting on and off the exam table, and was able to rise from the chair without difficulty.[70] Dr. Digamber found Ms. Connors to have a positive straight leg raise, no joint deformity or effusion, and all hand and finger dexterity intact with grip strength five out of five bilaterally.[71] Dr. Digamber conducted a lumbosacral spine x-ray and found the x-ray to be normal.[72] ALJ Garrety also notes Dr. Digamber found Ms. Connors showed no evidence of impaired judgment or significant memory impairment, and despite claiming in her testimony being in a fog due to her medication.[73]

ALG Garrety accorded great weight to those portions of Dr. Digamber's opinion of Ms. Connors being able to perform sedentary work because Dr. Digamber is an acceptable medical source, personally examined Ms. Connors, and knowledgeable of Social Security regulations and requirements.[74] ALJ Garrety found Dr. Digamber's opinion well supported by "other substantial medically acceptable clinical and laboratory diagnostic evidence" finding the diagnostic imaging had no significant findings, along with a record of minimal, inconsistent, and conservative treatment.[75] ALJ Garrety found Dr. Digamber's opinion consistent with the Doctor's own examination and objective findings of Ms. Connors because Ms. Connors had a normal stance and full strength in all extremities, reported cooking several times a week, showering, and dressing herself.[76]

ALJ Garrety's decision to give little weight to Dr. Digamber's finding of Ms. Connors being able to work only seven hours is supported through substantial evidence. The ALJ does not need to provide a written evaluation about disregarding Dr. Digamber's indication of

working only seven total hours because the ALJ only needs to articulate an analysis based on the evidence.[77] ALJ Garrety articulated why she chose not to give weight to Dr. Digamber's total amount of hours able to work assessment by reconciling Dr. Digamber's and Dr. Arnold's opinions.[78] The ALJ evaulated the physical assessment conducted by State agency medical consultant, Dr. Gordon C. Arnold, to find Ms. Connors has the ability to perform a total of 8 hours of work.[79] ALJ Garrety explained Dr. Digamber's opinion is generally consistent with the opinion of Dr. Arnold, except for Dr. Digamber opining Ms. Connors only being able to work seven hours and Dr. Arnold's opinion she is able to work eight hours.[80] ALJ Garrety found Ms. Connors could perform sedentary work, and did not give great weight to Dr. Digamber's opinion on Ms. Connors ability to only work seven hours because of the diagnostic images' positive findings, inconsistent treatment and complaints of pain, evidence of conservative treatment, and Ms. Connors's testimony about her ability to function.[81]

Based on ALJ Garrety's detailed review of both of the State's medical examiners' opinions, diagnostic imaging, inconsistent complaints of pain, conservative treatment, and Ms. Connors's testimony, the ALJ found Dr. Digamber's seven hours of work ability assessment unsupported by the record and afforded it little weight.

We find ALJ Garrety articulated the analysis for disregarding part of Dr. Digamber's opinion and supported her decision with substantial evidence.

### C. ALJ Garrety did not err in finding Ms. Connors retained the ability to return to past relevant work.

Ms. Connors objects to ALJ Garrety finding Ms. Connors retained the ability to return to her past work as an administrative assistant. Ms. Connors claims the ALJ failed to properly consider the demands of Ms. Connors's past relevant work, and failed to properly assess her residual functional capacity based off the vocational expert's testimony.

10

Our court of appeals does not require the ALJ to submit the vocational expert to every impairment alleged by the claimant.[82] An ALJ may discount giving limitations and impairments to the vocational expert if reasonably not established by the record.[83] ALJ Garrety's decision to discount evidence when questioning the vocational expert is proper because the evidence of her inability to sit, stand, and walk for more than seven hours in an eight hour work day is not sufficiently established by the record.[84] The ALJ found the record does not support Ms. Connors's claim of being unable to perform sedentary work. ALJ Garrety addressed her reasons for providing little weight to Dr. Semanoff's and Dr. Digamber's opinion regarding the total amount of hours Ms. Connors could sit, stand, and walk during an eight-hour workday and cited evidence contradicting Ms. Connors's alleged physical limitations.[85] ALJ Garrety also addressed the record does not indicate Ms. Connors has any severe mental impairment, and the use of a cane does not erode the sedentary occupational base.[86] ALJ Garrety withheld evidence of limitations to the vocational expert because she did not reasonably find it established on the record.

ALJ Garrety did not err in finding Ms. Connors's able to perform sedentary work and return to her past relevant work as an administrative assistant.

### III. Conclusion

In the accompanying order, we affirm ALJ Garrety's October 23, 2015 decision denying Ms. Connors's application for disability insurance benefits. Our review is not based on whether we would arrive at the same conclusion after our examination and balancing of the evidence. We only decide whether ALJ Garrety's findings are based on substantial evidence derived from the record after considering the weight afforded to the adduced evidence. We find ALJ Garrety did not err in (1) affording limited weight to Dr. Semanoff's opinion, (2) affording great weight

11

to part of Dr. Digamber's opinion Ms. Connors's could perform sedentary work and limited weight to her opinion as to a seven hour work day, and (3) finding Ms. Connors capable of performing sedentary work and working as an administrative assistant.

---

[1] ECF Doc. No. 8, Record of Proceedings ("R.") 7.

[2] R. 228-29.

[3] R. 150.

[4] R. 228.

[5] R. 37-38, 40.

[6] R. 38.

[7] R. 15.

[8] R. 15.

[9] R. 25.

[10] R. 18, 24.

[11] R. 18.

[12] R. 24

[13] R. 18, 24.

[14] ECF Doc. No. 10, at 4-15.

[15] *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).

[16] *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting 42 U.S.C. § 405(g)).

[17] *Id.* (citing *Craigie v. Bowen*, 835 F.2d 56, 57 (3d Cir. 1987)).

[18] *Id.* (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[19] *Id.* (quoting *Rutherford*, 399 F.3d at 552) (internal quotations omitted).

[20] *Id.* (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir.1999)).

[21] *Trinh v. Astrue*, 900 F. Supp. 2d 515, 518 (E.D. Pa. 2012)(citing *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001)).

[22] 42 U.S.C. § 423(a)(1)(D)(2015).

[23] 42 U.S.C. § 423(d)(1)(A).

[24] *Id.* § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

[25] *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004).

[26] C.F.R. §§ 404.1502(a)(4), 414.920(a)(4)(i).

[27] *See id.* (mandating finding of non-disability if claimant is engaged in substantial gainful activity).

[28] C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)(mandating finding of non-disability if claimant's impairments are not severe).

[29] *See id.* at §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[30] *Id.*

[31] *See Id.* at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[32] *Plummer*, 186 F.3d at 428.

[33] ECF Doc. No. 10, at 6.

[34] *Matuskowitz v. Barnhart*, 348 F. Supp. 2d 371, 374 (E.D. Pa. 2004) (citing *Plummer* 186 F.3d at 427).

[35] *Miller v. Berryhill*, No. 16-00521, 2017 WL 3648494, at *3 (E.D. Pa. Aug. 22, 2017) (citing 20 C.F.R. § 416.927(c)(2)).

[36] *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (internal quotation marks omitted).

[37] *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986).

[38] *Morales*, 225 F.3d at 317 (internal quotations marks omitted).

[39] *Sherrod v. Barnhart*, No. 01-4731, 2002 WL 31429337, at *3 (E.D. Pa. Oct. 29, 2002).

⁴⁰ *Smith v. Astrue*, 961 F. Supp. 2d 620, 643 (D. Del. 2013) (citing *Dula v. Barnhart*, 129 F. App'x 715, 719 (3d Cir. 2005)); *accord Humphreys v. Barnhart*, 127 Fed. App'x 73, 76 (3d Cir. 2005); *Shelton v. Astrue*, No. 11–75J, 2012 WL 3715561, at *3 (W.D. Pa. Aug. 28, 2012); *Petrowsky v. Astrue*, No. 10–563, 2011 WL 6083117, at *14–15 (D. Del. Dec. 6, 2011).

⁴¹ *Salerno v. Comm'r of Soc. Sec.*, 152 Fed. App'x 208, 209 (3d Cir. 2005); *Hudson v. Comm'r of Soc. Sec.*, 93 Fed. App'x 428, 431 (3d Cir. 2004). *See also Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (citing *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)).

⁴² *Chandler v. Comm'r Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. *See* 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, *see, e.g.,* 20 C.F.R. § 404.1527(d)(1)-(2), '[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity . . . .'" *Id.* (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)).

⁴³ *Titterington v. Barnhart*, 174 Fed. App'x 6, 11 (3d Cir. 2006); *see also Chandler*, 667 F.3d at 362 (ALJ could extrapolate based on evidence in record because every fact incorporated in an RFC does not need to have been found by a medical expert).

⁴⁴ R. at 23, 197.

⁴⁵ R. at 20, 199-200.

⁴⁶ R. at 20, 409.

⁴⁷ R. at 23, 407.

⁴⁸ R. at 20.

⁴⁹ R. at 21, 387-340.

⁵⁰ R. at 23, 408.

⁵¹ R. at 23, 408.

⁵² R. at 23, 227.

⁵³ R. at 23, 389. The parties do not define the acronyms AP and CR.

⁵⁴ R. at 23, 380.

⁵⁵ R. at 380.

[56] R. at 408.

[57] R. at 23, 380.

[58] R. at 23, 199.

[59] R. at 23, 207.

[60] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d at 361 (citing 20 C.F.R. § 404.1527(d)(1)-(2)).

[61] *Chandler*, 667 F.3d at 362 (citing 20 C.F.R. § 404.1527 (f)(2)(ii)).

[62] *Comiskey v. Astrue*, 2010 WL 308979, at *9 (E.D. Pa. Jan. 27, 2010) (citing *Johnson v. Comm'r Soc. Sec.*, 529 F.3d 198, 202-04 (3d Cir. 2008)).

[63] *Phillips v. Barnhart*, 91 Fed. App'x 755, 780 n.7 (3d Cir. 2004).

[64] *Chandler*, 667 F.3d at 362 (citing *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)).

[65] *Id.* at 361.

[66] 20 C.F.R. § 404.1527(e)(2)(i).

[67] R. at 21, 228.

[68] R. at 21, 228.

[69] R. at 21, 228.

[70] R. at 22-23, 230.

[71] R. at 22-23, 231, 332.

[72] R. at 22, 229.

[73] R. at 22, 332.

[74] R. 23, 237-244.

[75] R. 23, 196-200, 201-209, 210-227, 232, 244-410.

[76] R. 23, 228-236.

[77] *Phillips*, 91 Fed .App'x at 780 n.7.

[78] R. 24.

[79] R. 23, 58-69.

[80] R. 24.

[81] R. 24.

[82] *See id.* at 554.

[83] *Rutherford*, 399 F.3d at 554 (explaining hypotheticals given to the vocational expert should be credibly established by the record).

[84] R. at 24.

[85] R. at 23-24.

[86] SSR 96-9p (stating the sedentary occupational base is eroded when "the individual also has a nonexertional limitation(s) that narrows the potential range of sedentary work to which he or she might be able to adjust.")